## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| **METOH MBAH WILLIAM TAHTIYORK** | **CIVIL ACTION NO. 20-1196** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **U.S. DEPT. OF HOMELAND SECURITY, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Petitioner Metoh Mbah William Tahtiyork, a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner is detained at Richwood Correctional Center ("RCC"). Respondents oppose the Petition. [doc. # 11]. For reasons below, the Court should dismiss the Petition.

### Background

Petitioner, a native of Cameroon, entered immigration custody on July 31, 2019. [doc. #s 1, p. 4; 5-1, p. 17]. On September 20, 2019, an asylum officer found that Petitioner had a credible fear of persecution. [doc. # 5-1, p. 15].

On April 22, 2020, an immigration judge ordered Petitioner removed, denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* at 19. Petitioner appealed, but on October 7, 2020, the Board of Immigration Appeals ("BIA") denied the appeal. [doc. #s 5, p. 7; 5-1, p. 23]. He appealed again, via counsel, on May 14 or 15, 2020, allegedly providing additional evidence of the danger he will encounter if removed; his appeal is pending. [doc. #s 1, pp. 4-5; 5, p. 7].

Petitioner filed this Petition on approximately September 12, 2020. [doc. # 1, p. 8]. Seeking release from confinement, he first claims that he has "been in immigration detention for more than 6 months and [he] has not been given a bond hearing . . . to determine if [he] can be released." *Id.* at 6. He also claims that his life is at risk because he has "COPD" and pneumonia and is therefore vulnerable to a virus present at RCC, Covid-19. [doc. #s 1, pp. 6-7; 5, p. 6].

Petitioner claims further that he "has been detained in immigration custody for over 14 months even though no neutral decisionmaker—whether a federal judge or an immigration judge—has conducted a hearing to determine whether this lengthy incarceration is warranted based on a danger or flight risk . . . ." [doc. # 5, pp. 2, 6]. His "prolonged detention without a hearing" allegedly violates the Due Process Clause of the Fifth Amendment and the Eighth Amendment's Excessive Bail Clause." *Id.* at 2. He asks the Court to release him with "appropriate conditions of supervision if necessary, taking into account [his] ability to pay a bond" because the Government "has not established by clear and convincing evidence that [he] presents a risk of flight or danger in light of available alternatives to detention . . . ." *Id.* at 3. In the alternative, he seeks a bond hearing before either this Court or an immigration judge, at which the Government must either release him or establish by clear and convincing evidence that he presents a risk of flight or a danger to the community. *Id.* at 3, 13.

### Jurisdiction

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States." See *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). However, the 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings. See Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005).

District courts may not review challenges to final orders of removal. 8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); see *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues," *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); see also *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

## Law and Analysis

### I. Overstay in Detention

Petitioner claims that he has "been in immigration detention for more than 6 months" without a bond hearing "to determine if [he] can be released." *Id.* at 6.  He seeks release from confinement.  *Id.* at 7.

Considering that he seeks release and that he complains of detention for over six months following his order of removal, he impliedly invokes *Zadvydas v. Davis*, 533 U.S. 678 (2001), where the Supreme Court held that if an alien is detained for six months after a final order of removal, and if the alien petitioning for habeas corpus "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Zadvydas*, 533 U.S. at 701.  "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*

Petitioner's claim, however, is premature because his appeal before the BIA is pending and thus his order of removal is not final.  See *Lopez Acosta v. Rosen*, 2021 WL 54772, at *1 (5th Cir. Jan. 6, 2021) ("Because Lopez Acosta is currently pursuing administrative remedies below, he is no longer subject to a final order of removal . . . ."); *Castillo-Rodriguez v. I.N.S.*, 929 F.2d 181, 183 (5th Cir. 1991) ("The order of the immigration judge, then, is not final when a timely appeal is taken to the Board.").

Under 8 U.S.C. §1101(a)(47), an "order of deportation" becomes final upon the earlier of: "(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."  Likewise, under 8 C.F.R. § 1241.1, "An order of removal made by the

immigration judge . . . shall become final: (a) Upon dismissal of an appeal by the Board of Immigration Appeals . . . ." See *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).[1]

Respondents write in passing that Petitioner's "removal order became administratively final pursuant to 8 C.F.R. § 1241.1 on April 22, 2020." [doc. # 11, p. 7]. This is incorrect because April 22, 2020, was when the immigration judge first ordered Petitioner removed. [doc. # 5-1, p. 20]. Moreover, Respondents later state, contradictorily, that Petitioner "has been in *pre-removal* detention for just over one (1) year." *Id.* at 16. They also recognize that Petitioner is not confined under 8 U.S.C. § 1231, he is confined under 8 U.S.C. §1225(b). See *Jefferally v. Barr*, 2019 WL 3935977, at *2 (S.D. Tex. Aug. 20, 2019) ("Once a detained alien is subject to a final removal order, the statutory basis for detention is § 1231 . . . ."). They add, "Because Petitioner's case is currently pending a second appeal, Petitioner's removal proceedings are still pending." [doc. #11, p. 15].

The Court should dismiss this claim.

## II. Conditions of Confinement

### A. Habeas Corpus is Unavailable

Petitioner seeks release because he has "COPD" and is vulnerable to a virus present at RCC, Covid-19. Plainly, he challenges the conditions of his confinement.

"Simply stated, habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it

---

[1] Even if Petitioner was in custody beyond the presumptively reasonably removal period, he has provided nothing more than a conclusory allegation that there is no significant likelihood his of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701; *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (aliens must present sufficient evidence establishing that there is no significant likelihood of removal in the reasonably foreseeable future, and not merely offer conclusory statements).

cannot be used properly for any other purpose. While it is correctly alluded to as the Great Writ, it cannot be utilized as . . . a springboard to adjudicate matters foreign to the question of the legality of custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).

"Allegations that challenge the fact or duration of confinement are properly brought in habeas petitions, while allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007). "A § 2241 habeas petition is the proper procedural vehicle for challenging an action that 'directly implicates the duration of' a prisoner's confinement. *Davis v. Fechtel*, 150 F.3d 486, 487, 490 (5th Cir. 1998). It is not, however, the proper procedural vehicle for claims . . . regarding the conditions of confinement." *Boyle v. Wilson*, 814 F. App'x 881, 882 (5th Cir. 2020).[2]

In *Moore v. King*, No. 08-60164, 2009 WL 122555, at *1 (5th Cir. Jan. 20, 2009), for instance, the petitioner sought habeas relief, challenging the conditions of his confinement. The court affirmed the dismissal of his claim, citing *Pierre* for the rule that habeas is simply not available.[3]

---

[2] See *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) ("[A] habeas petition 'is the proper vehicle to seek release from custody,' while a civil rights suit pursuant to 42 U.S.C. § 1983 for a state prisoner or under *Bivens* for a federal prisoner is 'the proper vehicle to attack unconstitutional conditions of confinement and prison procedures.'") (quoting *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997)).

[3] See *Mora v. Warden, Fed. Corr. Complex, Yazoo City Medium*, 480 F. App'x 779, 780 (5th Cir. 2012) (affirming dismissal of a 2241 petition as "not cognizable" because it related to the petitioner's "medical needs, and a determination in his favor would not result in his accelerated release."); *Figueroa v. Chapman*, 347 F. App'x 48, 50 (5th Cir. 2009) ("[T]he district court found it could not grant her relief pursuant to Section 2241 because her application was 'not in reference to the imposed sentence—but for medical needs.' We agree."); *McBarron v. Jeter*, 243 F. App'x 857, 857 (5th Cir. 2007); *Watson v. Briscoe*, 554 F.2d 650, 652 (5th Cir. 1977).

Here, Petitioner's conditions-of-confinement claim is manifestly unrelated to the cause of his detention.  The Court should dismiss it.

**B. *Cheek v. Warden* and *Fraihat v. ICE***

*Cheek v. Warden* and *Fraihat v. U.S. Immigration & Customs Enf't* do not alter the conclusion above.

**i. *Cheek v. Warden***

In an unpublished opinion, *Cheek v. Warden of Fed. Med. Ctr.*, 2020 WL 6938364, at *1 (5th Cir. Nov. 24, 2020), a "federal prisoner brought a *habeas* application pursuant to 28 U.S.C. § 2241[,]" seeking release "to home confinement due to the global pandemic created by COVID-19."  The court first observed, consistent with the authority above: "Section 2241 applications are used to challenge the *length* of a prisoner's sentence.  If the prisoner wishes to challenge the *conditions* of his confinement, that claim is brought under 42 U.S.C. § 1983."  *Id.* (citations omitted).

The court then found that the "request for release to home confinement in the context of a global pandemic was properly *brought* as an application for a writ of *habeas corpus* under Section 2241 *because a favorable ruling from the district court would accelerate his release*."  *Id.* (italics added).  This conclusion, though, is misleading.  The court held that because release to home confinement would accelerate the petitioner's release, the request for home confinement constituted a request for habeas corpus.  It did not hold that the district court possessed authority to grant habeas corpus.

In fact, the court stated explicitly that "the pandemic did not create judicial authority to grant home confinement[,]" that "[n]o inmate has a constitutional right to be housed in a particular place or any constitutional right to early release[,]" and that [i]t is not for a court to

step in and mandate home confinement for prisoners, regardless of an international pandemic."
*Id.*

Here, Petitioner definitively seeks habeas corpus relief.  He "brought" his request "properly,"—especially considering that a request for release would be improper under Section 1983 and *Bivens*—but the relief he seeks is unavailable.

*Cheek* concluded that the petitioner could not obtain the specific relief he sought under 18 U.S.C. § 3624(c)(2), reasoning that the Bureau of Prisons ("BOP") and the Attorney General "have the discretion to consider the appropriateness of home release based on certain statutory and discretionary factors."  *Id.*

But then the court hesitated.  Leaving the question unresolved, *Cheek* hypothesized that "vested authority in the BOP *might* not wholly eliminate a court's role in such decisions."  With a bit more conviction, *Cheek* then cited *Melot*, a Fifth Circuit proceeding in which a prisoner sought participation in the Elderly Offender Home Detention Program, for the proposition that "[a] challenge to the BOP's or Attorney General's interpretation of the statute *would* make judicial review appropriate."  *Id.* (italics added) (citing *Melot v. Bergami*, 970 F.3d 596, 599–600 (5th Cir. 2020)).  But *Cheek* failed to mention that in *Melot*, 970 F.3d at 599, the court clearly stated that "Melot's claim involves his conditions of confinement . . . [and] is not cognizable under § 2241[.]"[4]

---

[4] See *Francois v. Garcia*, 2020 WL 7868101, at *3 (S.D. Tex. Dec. 24, 2020) ("*Cheek* seems to be in contravention of an earlier, but published, Fifth Circuit opinion from this year, *Melot v. Bergami*, 970 F.3d 596 (5th Cir. 2020)."); *Ndudzi v. Perez*, 2020 WL 7974296, at *5 (S.D. Tex. Dec. 24, 2020) ("*Cheek* offered little by way of analysis and did not discuss how, if at all, finding subject matter jurisdiction over conditions of confinement claims raised in habeas comported with this circuit's controlling precedent. . . . *Cheek* is difficult to reconcile with Fifth Circuit precedent concluding that a prisoner demonstrating Eighth Amendment violations involving cruel and unusual punishment 'is still not entitled to release from prison.' *Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979); *see also Schipke v. Van Buren*, 239 F. App'x 85 (5th Cir. 2007)

Regardless, the petitioner in *Cheek* did "not indicate the extent to which the BOP actually considered [him] for home-confinement release[,]" causing the court to conclude:

> Without a denial from the BOP, there is nothing for us to review. Cheek presents no indication that the BOP denied him or others, appropriately or otherwise, a request for home confinement. Instead, Cheek seems to challenge the BOP's silence, without any specific adverse decision. . . . [W]e must have *some* decision to review under *Melot*.
>
> . . . .
>
> We find that Cheek's claims do sound in *habeas* but that he has not presented an administrative decision that this court can review.

*Id.*

Here, Petitioner does not seek release under 18 U.S.C. § 3624.  Even if he did, he neither presents an administrative decision for review nor challenges the Attorney General or BOP's statutory interpretation of Section 3624.[5]  Further, it is unclear whether Section 3624(c) applies to ICE detention.  It provides, "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of *imprisonment* of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."  18 U.S.C. § 3624 (italics added).  Reviewing Section 3624(e), *United States v. Garcia-Rodriguez*, 640 F.3d 129, 132 (5th Cir. 2011), found that "a

---

(per curiam) ("Habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration.") (quoting *Hanberry*, 592 F.2d at 249)). If, as *Hanberry* instructs, Eighth Amendment violations do not warrant release from prison, the Court is skeptical that it has subject matter jurisdiction over Petitioner's habeas petition—through which she seeks release from immigration detention for analogous violations she has raised under the Fifth Amendment.").

[5] At best, Petitioner challenges an officer's denial of parole, following Petitioner's request for release for medical reasons.  [doc. # 5-1, p. 1].

9

straightforward reading of the applicable statute shows that administrative detention by ICE is not the same as imprisonment by the BOP."

**ii. *Fraihat v. ICE***

Petitioner maintains that *Fraihat v. U.S. Immigration & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *order clarified,* 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020), entitles him to, or supports his claim for, habeas corpus.

*Fraihat* is not binding precedent for this Court.  Further, as another court explained:

> In *Fraihat*, the issue presented was whether the conditions in which ICE detainees are held during the pandemic violate the Constitution, and if so, what measures can and should be taken to ensure constitutionally permissible conditions of detention. *Id.* The Court subsequently entered an injunction intended to ensure minimum lawful conditions of confinement at all immigration facilities during the pandemic. *Id.* at 709. Notwithstanding Petitioner's assertion, the *Fraihat* injunction does not mandate the release of all medically vulnerable individuals. In fact, the *Fraihat* Court specifically noted that "[t]he class's interest is not in release, but in not being subject to unlawful conditions of confinement."

*Madou Toure v. Andrew Huron, et al.*, 2021 WL 75698, at *4 (W.D. Tex. Jan. 8, 2021).

Plainly, *Fraihat* is inapplicable.

**C. Habeas Corpus and Section 1983**

"[I]n instances in which a petition combines claims that should be asserted in habeas with claims that properly may be pursued as an initial matter under § 1983, and the claims can be separated, federal courts should do so, entertaining the § 1983 claims." *Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir. 1987).  Here, Petitioner's claims are inseparable because, for both claims, he seeks release from confinement.  Further, release from confinement is not a cognizable form of relief for this conditions-of-confinement claim.  Thus, the Court should decline to re-designate Petitioner's pleading as a civil rights complaint. Moreover, re-designating the pleading would obligate Petitioner to pay an additional filing fee.

Petitioner alone must decide if he wishes to pursue monetary relief in a separate civil-rights proceeding.

If Petitioner desires to pursue a civil rights action, he must file a separate proceeding, utilizing the appropriate complaint form.  Petitioner should be cognizant that, to file a separate civil rights proceeding, he must either pay the requisite filing fee or submit a properly executed application to proceed in forma pauperis.[6]  Petitioner should likewise be cognizant that he must exhaust available administrative remedies before pursuing relief here for his conditions-of-confinement claim.

### III. Bond Hearing

Petitioner is detained under 8 U.S.C. § 1225.  [doc. # 11, pp. 12-13].  Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum."  Plainly, Section 1225 does not authorize release on bond.  *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).

Petitioner, however, claims that the Constitution does require an individualized bond determination under his circumstances.  Respondents disagree, arguing that "as an arriving alien, Petitioner has been afforded all of the due process to which he is entitled."  [doc. # 11, p. 13].

This Court recently decided this issue in *Dzheison Ford v. Timothy Ducote, et al*., 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020) (declining to adopt the magistrate judge's Report and Recommendation).  There, the Court held:

> Control over matters of immigration is a sovereign prerogative, largely within the control of the executive and legislative branches of government.  *Landon v. Plasencia*, 459 U.S. 21 (1982). Such matters are exclusively entrusted to the

---

[6] Petitioner is advised that the cost of litigating a civil rights complaint pursuant to Section 1983 is significantly higher than the cost of litigating a habeas corpus petition.

political branches of government, largely immune from judicial inquiry or interference. *Harisiades v. Shaughnessy*, 342 U.S. 580 (1952).

The pertinent portion of 8 U.S.C. § 1225(b)(1)(B)(ii) states as follows: "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum."

As judges, our job is to interpret the law enacted by the legislative and executive branches of government. The statute does not provide for a bond hearing. The language "shall be detained" is clear.

Respondents cite persuasive authority. In *In re M-S-*, 27 I & N Dec. 509 (2019), the Attorney General of the United States concluded that Section 1225 (b)(1)(B)(ii) requires detention until removal proceedings conclude, except for the possibility of parole, and cannot be read to contain an implicit exception for bond.

In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.

In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.

Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal after final order of

deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id.* at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id.* at 702.

The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."

Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).[7]

The Magistrate Judge incorrectly relied on *Zadvydes* [sic]. As discussed, *Zadvydes* only applies when the alien's detention is "indefinite" or "potentially permanent." That is not the case here.

*Id.* (footnote in original).

Here, constrained by this authority, Petitioner is not constitutionally entitled to a bond hearing. As in *Ford*, Petitioner's "detention ends when the removal proceedings end." *Id.* As Respondents phrase it: "The Petitioner's second appeal, which he chose to file in this matter, is pending. Upon completion of the appeal process, Petitioner will be subject to removal from the United States, or will be granted asylum." [doc. # 11, p. 17].

Accordingly, the Court should deny this claim.

---

[7] In *Jennings v. Rodriguez*, a Mexican citizen and lawful permanent resident of the United States filed a petition for writ of habeas corpus on behalf of himself and other aliens detained for over six months without a bond hearing. The Supreme Court reversed the District Court and Ninth Circuit Court of Appeals finding detention until the asylum application is finished is a specified period of time and did not violate Rodriguez's due process rights.

## Recommendation

For reasons above, **IT IS RECOMMENDED** that Petitioner Metoh Mbah William Tahtiyork's Petition be **DISMISSED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 12th day of January, 2021.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE